1  KAREN P. HEWITT
   United States Attorney
2  CHRISTINA M. McCALL
   Assistant United States Attorney
3  California Bar Number 234139
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-6760
   Facsimile: (619) 235-2757
6
   Attorneys for Plaintiff
7  United States of America

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  UNITED STATES OF AMERICA,        )    Criminal Case No.  07CR2873-LAB
                                     )
12                                   )    **UNITED STATES' RESPONSE AND**
                                     )    **OPPOSITION TO DEFENDANT'S**
13                                   )    **MOTIONS TO:**
                         Plaintiff,  )
14                                   )    **(1)    COMPEL DISCOVERY AND**
             v.                      )    **        PRESERVE EVIDENCE;**
15                                   )    **(2)    DISMISS INDICTMENT FOR**
                                     )    **        FAILURE TO ALLEGE**
16                                   )    **        ESSENTIAL ELEMENTS**
    JOSE MARIE PEREZ-NEGRETE,        )    **(3)    SUPPRESS ANY STATEMENTS**
17                                   )    **(4)    GRANT LEAVE TO FILE**
                                     )    **        FURTHER MOTIONS**
18                                   )
                                     )    **ALONG WITH UNITED STATES'**
19                       Defendant.  )    **MOTION FOR RECIPROCAL**
                                     )    **DISCOVERY AND MOTION TO**
20                                   )    **COMPEL FINGERPRINT EXEMPLARS.**
    _____  )
21                                        Date:        November 26, 2007
                                          Time:        2:00 p.m.
22                                        Honorable:   Larry A. Burns

23        Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States

24  Attorney, and Christina M. McCall, Assistant United States Attorney and hereby files its Response and

25  Opposition to Defendant's Motions and its Motion for Reciprocal Discovery.  This  Response and

26  Opposition is based upon the files and records of the case together with the attached statement of facts

27  and memorandum of points and authorities.

28  ///

    ///

1

2                                              **I**

3                              **STATEMENT OF FACTS**

4    **A.    Defendant's Criminal and Immigration Record**

5         Defendant, Jose Maria Perez-Negrete, is a 49-year-old citizen of Mexico.  Defendant never had

6    any legal permission to enter or remain in the United States.  He is no stranger to this court; he has

7    several criminal convictions in the Southern District of California.  In 1999, Defendant was convicted

8    of violating 8 U.S.C. § 1326 in case 99CR3464-GT and sentenced to 60 days and a year of supervised

9    release for that felony offense.  In 2000, he was again convicted of a felony violation of 8 U.S.C. § 1326

10   in case 00CR2065-T, and sentenced to 10 months of custody and two years of supervised release.  As

11   a result of that 2000 conviction, Judge Thompson revoked supervised release in case 99CR3464-GT and

12   imposed a sentence of six months, to be served consecutive to the sentence in 00CR2065-T.  In 2002,

13   Defendant was convicted of violating 18 U.S.C. § 1001 in case 02CR2916-W, and received a sentence

14   of eight months in prison and three years of supervised release.  His supervised release in case

15   00CR2065-T was again revoked, and he was sentenced to serve eight months in prison, consecutive to

16   case 02CR2916-W.  In 2004, Defendant was convicted of violating 18 U.S.C. § 1001 in case 04CR1587-

17   IEG, and received a sentence of fifteen months in prison and two years of supervised release.  Following

18   that conviction, his supervised release in case 02CR2916-W was revoked and Defendant received a

19   revocation sentence of 12 months, consecutive to the sentence in 04CR1587-IEG. Judge Gonzalez has

20   begun revocation proceedings for the 2004 case, as a result of this arrest.

21        Not surprisingly, Defendant has a disturbing number of arrests at or near the border.  Using a

22   variety of aliases as well as his true name, Defendant has been arrested 27 times by Border Patrol agents,

23   dating back at least to 1995.

24        Defendant has been ordered removed or <u>deported by immigration judges</u> on the following six

25   dates:

26            September 7, 2005
              October 30, 1995
27            December 7, 1995
              June 5, 1996
28            October 2, 1996
              October 30, 1997

Immigration officers <u>reinstated Defendant's order of removal</u> on the following occasions:

November 5, 1998
February 16, 1999
February 25, 1999
December 1, 1999
June 14, 2000
October 16, 2002
May 11, 2004

Immigration officials removed Defendant by <u>executing Warrants of Removal</u> on the following

dates:

September 7, 1995
March 14, 1996
June 5, 1996
October 2, 1996
September 30, 1997
November 5, 1998
February 16, 1999
February 24, 1999
March 2, 1999
January 20, 2000
July 27, 2001
November 28, 2003
April 27, 2006

**B.    <u>Defendant's Apprehension</u>**

On September 23, 2007, in an area miles northeast of the Otay Mesa Port of Entry, agents

encountered Defendant and seven other people hiding in the "No Name Draw." Through binoculars,

at about 6:00 p.m., Agent Ratz saw a group of people walking northwest on top of the 562 hill, heading

towards the No Name Draw, which is a low-lying area between significant peaks. One person appeared

to be guiding the group; that person was Defendant. Defendant looked with his own binoculars toward

Agent Ratz, then seemed to instruct his group to sit down in the No Name Draw. Agent Ratz notified

other agents by service radio about the group and its location.

Agents Blea and Sturrock responded to the area and searched for the group. Agent Ratz

continued to observe the area through his binoculars, from his vantage point above No Name Draw.

When Agents Blea and Sturrock encountered the group, Defendant was in front of the group. Defendant

began running north into the bottom of the No Name Draw. Agent Blea chased him, caught up to him,

and detained him. Defendant told Agent Blea that he was a Mexican citizen who had no immigration

documents that would allow him to enter or remain in the United States legally. Meanwhile, Agent

1    Sturrock stayed with the other seven members of the group.  At around 7:00, Agent Blea arrested

2    Defendant and transported him with the rest of the group to the Chula Vista Border Patrol station.

3         After researching Defendant's extensive history of criminal and immigration violations, the

4    agents informed Defendant that he was going to be prosecuted criminally, and that his administrative

5    rights no longer applied.  The agents read the <u>Miranda</u> warnings to Defendant, who elected to answer

6    questions only in the presence of his attorney.  Questioning ceased at that point.

7         On October 17, 2007, a federal grand jury for the Southern District of California returned a one-

8    count Indictment against Defendant, charging him with being an alien who knowingly and intentionally

9    attempted to enter the United States without the consent of the Attorney General or the Secretary of

10   Homeland Security, after having been previously excluded, deported, or removed, in violation of Title

11   8 U.S.C. § 1326.  The Indictment further alleged that Defendant was removed from the United States

12   subsequent to September 13, 2004, the date of one of his prior felony convictions.

13                                    **II**

14   **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS**

15   **A.      ORDER COMPELLING DISCOVERY IS UNNECESSARY**

16          <u>No Order is Required; The United States is Complying With Discovery Obligations</u>

17          The United States has produced 238 pages of discovery as of the filing of this response, as well

18   as a digital video recording of Defendant's post-arrest <u>Miranda</u> warnings.  Defense counsel has also

19   viewed Defendant's lengthy A-file and received copies of the non-privileged documents requested.  The

20   United States has complied and will continue to comply with its discovery obligations under <u>Brady v.</u>

21   <u>Maryland</u>, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of Criminal Procedure

22   16.  Because the United States has complied and will comply with its discovery obligations, an order to

23   compel discovery is unwarranted and the request for such an order should be denied.

24          1.      <u>Defendant's Statements</u>

25          The United States has already provided defense counsel with an incident report detailing his brief

26   field statements, as well as a DVD recording of his post-arrest interview, where he invoked his right to

27   be questioned only in the presence of his attorney.

28

                                      4

1          2.       Arrest Reports, Notes and Dispatch Tapes

2          The United States has provided Defendant with all known reports related to Defendant's arrest

3    in this case.  The United States is not aware of the existence of any dispatch tapes relevant to this case,

4    but will provide a copy of all existing deportation tapes, which have been requested.  The United States

5    will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16.

6          The Government has no objection to the preservation of the handwritten notes taken by any of

7    the Government's agents that are available at this time.  See United States v. Harris, 543 F.2d 1247, 1253

8    (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective

9    government witnesses).  However, the Government objects to providing Defendant with a copy of any

10   available rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where

11   the content of those notes have been accurately reflected in a type-written report.  See United States v.

12   Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule

13   16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies"

14   between the notes and a report).  The Government is not required to produce rough notes pursuant to the

15   Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the

16   notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been

17   approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).

18   The rough notes in this case probably do not constitute "statements" in accordance with the Jencks Act.

19   See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements

20   under the Jencks Act where notes were scattered and all the information contained in the notes was

21   available in other forms).  The notes are not Brady material because the notes do not present any material

22   exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment.

23   Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither

24   favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27

25   F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was

26   insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule

27   16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

28          3.       Brady Material

07CR2873-LAB

1    The United States will comply with its obligations to disclose exculpatory evidence under <u>Brady</u>

2 <u>v. Maryland</u>, 373 U.S. 83 (1963).    Under <u>Brady</u> and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), the

3 government need <u>not</u> disclose "every bit of information that might affect the jury's decision." <u>United</u>

4 <u>States v. Gardner</u>, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. <u>Id.</u>

5 "Evidence is material under <u>Brady</u> only if there is a reasonable probability that the result of the

6 proceeding would have been different had it been disclosed to the defense." <u>United States v.</u>

7 <u>Antonakeas</u>, 255 F.3d 714, 725 (9th Cir. 2001). Impeachment evidence may constitute <u>Brady</u> material

8 "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence."

9 <u>United States v. Blanco</u>, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).

10    4.    <u>Information that May Result in a Lower Sentence</u>

11    The Government is unaware of any mitigating information in this case, and recognizes that

12 Defendant's lengthy history of criminal and immigration violations is aggravating information.

13    5.    <u>Defendant's Prior Record</u>

14    The United States has provided Defendant with a copy of all documents relating to Defendant's

15 prior criminal record within the Government's possession, custody, or control and, consequently, has

16 fulfilled its duty of discovery under Rule 16(a)(1)(D). <u>See</u> <u>United States v. Audelo-Sanchez</u>, 923 F.2d

17 129 (9th Cir. 1990). To the extent that the United States determines that there are any additional

18 documents reflecting Defendant's prior criminal record, the United States will provide those to

19 Defendant.

20    6.    <u>404(b) and 609 Evidence</u>

21    The United States will disclose in advance of trial the general nature of any "other bad acts"

22 evidence that it  intends to introduce at trial pursuant to Federal Rule of Evidence 404(b), and any prior

23 convictions it intends to use as impeachment pursuant to Rule 609. The discovery materials include

24 numerous charging and conviction documents from Defendant's state court criminal cases, as well as

25 his recent federal conviction.

26    7.    <u>Evidence Seized</u>

27    The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E)

28 in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

6

1  evidence seized that is within its possession, custody, or control, and that is either material to the

2  preparation of Defendant's defense, or is intended for use by the United States as evidence during its

3  case-in-chief at trial, or was obtained from or belongs to Defendant.

4          The United States need not, however, produce rebuttal evidence in advance of trial.  United

5  States v. Givens, 767 F.2d 574, 583-84 (9th Cir. 1984).

6          8.    Preservation of Evidence

7  _____The United States will preserve all evidence to which the defendant is entitled to pursuant to the

8  relevant discovery rules.  The United States objects to a blanket request to preserve all physical evidence.

9          9.    Henthorn Material

10         In advance of trial, the Government will arrange for agencies to conduct a review of the

11  witnesses' personnel files, to determine if there is any information that could be used for impeachment

12  of the witness.

13         10.    Tangible Objects

14         The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E)

15  in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible

16  objects that are within its possession, custody, or control, and that is either material to the preparation

17  of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief

18  at trial, or was obtained from or belongs to Defendant.

19         11.    Expert Witnesses

20         The United States will comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with

21  notice and a written summary of any expert testimony that the United States intends to use during its

22  case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

23         12.    Evidence of Bias or Motive to Lie

24         Defendant requests evidence showing bias motive to falsify or distort testimony.  The United

25  States recognizes its obligation to provide information related to the prejudice, bias or other motive to

26  slant testimony of trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959).  At this time,

27  the United States is unaware of any prospective witness who is biased or prejudiced against Defendant

28  or who has a motive to falsify or distort his or her testimony.

13.    <u>Impeachment Evidence</u>

_____The United States acknowledges its obligation to provide impeachment information about its witnesses that meets the relevant standard of materiality, i.e., "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." <u>Blanco</u>, 392 F.3d at 387.  The United States has or will comply with its obligation.

14.    <u>Evidence of Criminal Investigation of Government Witness</u>

_____The United States recognizes and will comply with its obligations under the case law and discovery rules to disclose exculpatory information and impeachment information.  To the extent such disclosures are not required by the case law and rules, the United States opposes Defendant's broad request for evidence of any disciplinary investigations into prospective witnesses by federal, state or local authorities, regardless of the outcome of the investigations.  Moreover, as discussed above, the United States has no obligation to disclose information not within its possession.  <u>See</u> <u>United States v. Gatto</u>, 763 F.2d 1040, 1048 (9th Cir. 1985); <u>United States v. Aichele</u>, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); <u>United States v. Chavez-Vernaza</u>, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. <u>Beavers v. U.S.</u>, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

15.    <u>Evidence Affecting Perception and Memory</u>

The United States is unaware of any evidence that any government witness's physical ability to perceive, recollect or communicate or commitment to tell the truth is impaired.  The United States opposes the request for information that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.  This request is overly broad and ignores the standard of materiality set forth in <u>Brady</u> for exculpatory or impeachment information.

16.    <u>Witness Addresses</u>

The United States will provide the names of the witnesses it intends to call at trial.  Similarly, the government trusts that Defendant will provide the names of the witnesses he intends to call.

8

1   Defendant has already received access to the names of potential witnesses through the discovery sent

2   to his counsel.  The United States objects to Defendant's request for witness addresses.  None of the

3   cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness

4   addresses.  The United States does not know of any individuals who were witnesses to Defendant's

5   offenses except the law enforcement agents who apprehended him.  The names of these individuals have

6   already been provided to Defendant.

7           17.    Witnesses Favorable to Defendant

8           The Government is not aware of any witnesses who would present testimony favorable to

9   Defendant.  As indicated above, the United States will comply with its discovery obligations to produce

10  information that is exculpatory to Defendant.  To the extent that it discovers such information, the

11  United States will provide information about witnesses who made favorable statements about Defendant.

12          18.    Statements Relevant to the Defense

13          Again, the Government is well aware of its duty to turn over any potentially exculpatory

14  information.

15          19.    Jencks Act Material

16          The United States has or will comply with the disclosure requirements of the Jencks Act.  For

17  purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or

18  otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded

19  transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18

20  U.S.C. § 3500(e).  Notes of an interview only constitute statements discoverable under the Jencks Act

21  if the statements are adopted by the witness, as when the notes are read back to a witness to see whether

22  or not the government agent correctly understood what the witness was saying.  United States v. Boshell,

23  952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  By the

24  same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete

25  nature of the notes."   United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

26          The United States is not aware of any dispatch tapes containing Jencks Act material in this case.

27          20.    Giglio Information

28          The United States will comply with the requirements of Giglio v. United States, 405 U.S. 150

9

1 (1972).

2         21.    Agreements Between the Government and Witnesses

3      Again, the United States has complied and will continue to comply with its discovery obligations

4 under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of

5 Criminal Procedure 16. There are no agreements between the Government and any witness.

6       22-23.  Informants and Cooperating Witnesses

7      At this time, the United States is not aware of any confidential informants or cooperating

8 witnesses involved in this case. The government must generally disclose the identity of informants

9 where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense.

10 Roviaro v. United States, 353 U.S. 53, 59 (1957). These threshold requirements have been interpreted

11 to require that, if any cooperating witnesses or informants were involved or become involved, Defendant

12 must show that disclosure of the informer's identity would be "relevant and helpful" or that the informer

13 was the sole percipient witness before he would even be entitled to an in-camera evidentiary hearing

14 regarding disclosure of the informer's identity. United States v. Jaramillo-Suarez, 950 F.2d 1378, 1386-

15 87 (9th Cir. 1991), quoting Roviaro v. United States, 353 U.S. 53, 60 (1957). Any bias issues will be

16 handled pursuant to Brady.

17         24.    Scientific and Other Information

18      In advance of trial, the Government will turn over any scientific reports.

19         25.    Residual Request

20      As stated above, the United States will comply with its discovery obligations in a timely manner.

21 **B.**     **THE INDICTMENT STATES ALL ESSENTIAL ELEMENTS OF THE OFFENSE**

22      Defendant claims that the indictment is deficient for failure to allege that he underwent

23 "inspection and admission by an immigration officer or actual and intentional evasion of inspection at

24 the nearest inspection point." The Ninth Circuit also foreclosed this argument in Rivera-Sillas, 417 F.3d

25 at 1019-20. The Rivera-Sillas court specifically held that "Pacheco-Medina, however, did not require

26 the Government to charge all the elements of entry. . . . The Government need not plead and prove entry

27 in order to charge or convict an

28 alien with a § 1326 'found in' crime." Id. at 1020. Consequently, this motion should also fail.

07CR2873-LAB

## C.    DEFENDANT'S STATEMENTS ARE ADMISSIBLE

Defendant moves this Court for an order suppressing his pre-<u>Miranda</u> statements because they were allegedly made while in custody. Alternatively, Defendant seeks a voluntariness hearing under 18 U.S.C. § 3501. As discussed below, Defendant's motions should be denied.

### 1.    Defendant's Motion Should be Denied Without a Hearing

Contrary to Defendant's request, the Court should deny the motion to suppress without a hearing. Under Ninth Circuit precedent and Southern District Local Criminal Rule 47.1(g)(1), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant puts forth, in a declaration, sufficient facts to require a factual finding. <u>United States v. Batiste</u>, 868 F.2d 1089, 1098 (9th Cir. 1989) ("defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . the district court was not required to hold an evidentiary hearing."). "A hearing will not be held on a defendant's pretrial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue exists such that a hearing is required.'" <u>United States v. Howell</u>, 231 F.3d 615, 621(9th Cir. 2000) (citations omitted).

Here, Defendant has failed to place any issue at factual dispute through a declaration, in clear opposition to Local Rule 47.1(g). Defendant also fails to provide any factual support that a violation of <u>Miranda</u> occurred. This Court should deny Defendant's motion to suppress the statements he made to officials on the day of his arrest.

### 1.    The Court Should Deny Defendant's Motion To Suppress Because The Defendant Was Not In Custody And, Therefore, Miranda Was Inapplicable

Defendant's <u>Miranda</u> challenge to his pre-arrest statements should be denied because they were not made while in custody. <u>Miranda</u> warnings must be administered only when two factors are present: (1) the suspect is in custody; and (2) the suspect is subjected to police interrogation. <u>Miranda v. Arizona</u>, 384 U.S. 436, 477-78 (1966). The <u>Miranda</u> Court cautioned that its rule was "not intended to hamper the traditional function of police officers in investigating crime." <u>Id.</u> (citation omitted). "A defendant is in custody when, based upon a review of all the pertinent facts, 'a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave.'" <u>United States v. Wauneka</u>, 770 F.2d 1434, 1438 (9th Cir. 1985). To determine whether a suspect is in custody, courts must examine the objective circumstances of the situation, not the subjective views of the

1    interrogator or the person being questioned.  Stansbury v. California, 511 U.S. 318, 323 (1994) (per

2    curiam).

3         The Supreme Court has held that in the "general interest of effective crime prevention and

4    detection . . . a police officer may in appropriate circumstances and in an appropriate manner approach

5    a person for purposes of investigating possibly criminal behavior even though there is no probable cause

6    to make an arrest." Terry v.Ohio, 392 U.S. 1, 22 (1968).  This authorized investigatory detention or stop

7    which falls short of custody was extended to vehicles in United States v. Brignoni-Ponce, 422 U.S. 873

8    (1975), where the Supreme Court stated that "when an officer's observations lead him reasonably to

9    suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car

10   briefly and investigate the circumstances that provoke suspicion." Id. at 881.  The Supreme Court further

11   stated that the "officer may question the driver and passengers about their citizenship and immigration

12   status, and he may ask them to explain suspicious circumstances, but any further detention or search

13   must be based on consent or probable cause." Id. at 881-82.  Individuals "temporarily detained pursuant

14   to such stops are not 'in custody' for the purposes of Miranda." Berkemer v. McCarty, 468 U.S. 420,

15   439-40 (1984).

16        Thus, it is well settled that the safeguards required by Miranda v. Arizona become applicable

17   when a suspect's freedom of action is curtailed to the degree associated with formal arrest.  It is equally

18   well established that Border Patrol agents may, in appropriate circumstances, make a brief investigatory

19   stop and ask questions about citizenship and immigration status.  Brignoni-Ponce, 422 U.S. at 878-89.

20   Persons subjected to brief investigatory detentions are not entitled to Miranda warnings.  See, e.g.,

21   United States v. Woods, 720 F.2d 1022, 1029 (9th Cir. 1983).  The fact that an individual may be the

22   "focus" of a criminal investigation when questioned by the police does not compel the provision of

23   Miranda warnings in an otherwise non-custodial setting.  Beckwith v. United States, 425 U.S. 341, 347

24   (1976).

25        In United States v. Booth, 669 F.2d 1231, 1234 (9th Cir. 1981), the Ninth Circuit stated that

26   whether a person is in custody is answered by reviewing the totality of the facts involved at the time of

27   the alleged restraint.  Areas of inquiry include the language used by the officer to summon the individual,

28   the extent to which he is confronted with evidence of his guilt, the physical surroundings of the

interrogation, the duration of the detention and the degree of pressure applied to detain the individual. Based upon a review of all the pertinent facts, the trial court must determine whether a reasonable "innocent" person in like circumstances would conclude that after brief questioning, he would not be free to leave. <u>Id.</u> at 1236. In this regard, "even though one's freedom of action may be inhibited to some degree during an investigatory detention, Miranda warnings need not be given prior to questioning since the restraint is not custodial." <u>Id.</u> at 1237.

Defendant argues that the totality of the circumstances demonstrate that he was in custody and, therefore, entitled to <u>Miranda</u> warnings. He was briefly detained for an immigration field interview, so <u>Miranda</u> warnings were not necessary.

a.    <u>Language Used During The Initial Encounter</u>

There was nothing inherently custodial about Agent Blea's initial encounter with the Defendant. Border Patrol agents regularly ask immigration questions when they encounter groups of individuals walking or driving in remote locations near the border between the United States and Mexico. Moreover, reasonable, law-abiding individuals who are traveling extremely close to the border on a seldom-used road would expect that Border Patrol agents responsible for enforcing immigration laws might question them about their immigration status. Agent Blea and his partner approached a group of suspected illegal aliens after climbing up and across a mountain. Upon arrival, the two agents identified themselves as Border Patrol agents and instructed the group to sit down. Seven members of the group remained in place while Defendant chose to run down a hill, away from the group. After Agent Blea ran after Defendant and caught up with him, he asked Defendant about his citizenship and nationality. Such routine immigration questioning is not inherently custodial. Defendant had no reason to believe that he was under arrest or would not be free to leave after he sufficiently answered the questions. Thus, this factor weighs against a finding of custody.

b.    <u>Extent to Which The Defendant Was Presented With Evidence Of Guilt</u>

Defendant was not presented with any evidence of guilt prior to his arrest, except for his suspicious actions in running away when he was instructed to sit down. Thus, this factor also weighs against a finding of custody.

c.    <u>Physical Surroundings of the Interrogation</u>

13

1    Lastly, there was nothing intimidating or coercive about the surroundings where Defendant was

2    questioned.  Defendant is the one who chose to lead a group of illegal aliens into the Otay Mesa

3    mountains and who chose to run down the hill, rather than sitting down with the other seven border

4    crossers.  Furthermore, a coercive environment was not created simply because one Border Patrol agent

5    approached him for questioning, following Defendant's flight. A reasonable, law-abiding individual

6    hiking in the mountains very close to the border would not be alarmed to be approached by two Border

7    Patrol agents, wearing uniforms and carrying weapons while conducting routine duties.  So, the fact that

8    the two agents spotted a group and approached the members to question them about their citizenship is

9    insufficient to turn the physical surroundings into a coercive or intimidating environment.  Therefore,

10   because the Defendant was not led to a far off or physically intimidating location or subjected to coercive

11   contact, this factor, like the others discussed, weigh against a finding of custody.

12                               d.    Duration of the Detention

13   The initial encounter was a brief couple of questions to ascertain the immigration status of the

14   group.  If the group had presented valid documents allowing them to enter the United States, the

15   detention would have been extremely limited.  Given that none of the group's members had any right

16   to enter the United States, the immigration field interview necessarily turned into an arrest, because the

17   agents were confronted with evidence of illegal activity.  At the time that Defendant made his statements

18   in the field regarding his citizenship, the detention had not lasted very long.

19   Because Defendant was briefly detained during a routine field interview determine his

20   immigration status, he was not in custody.  Therefore, his answers to quick, routine immigration

21   inquiries should not be suppressed.

22                                          **III**

23             **UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

24   Defendant has invoked Fed. R. Crim.  P. 16(a) and the United States has voluntarily complied

25   with the requirements of Rule 16(a).  Therefore, provision 16(b) of that rule, requiring reciprocal

26   discovery, is applicable.  The United States hereby requests Defendant to permit the United States to

27   inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or

28   make copies of portions thereof, which are within the possession, custody or control of Defendant and

1    which he intends to introduce as evidence in his case-in-chief at trial.

2         The United States further requests that it be permitted to inspect and copy or photograph any

3    results or reports of physical or mental examinations and of scientific tests or experiments made in

4    connection with this case, which are in the possession or control of Defendant, which he intends to

5    introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends

6    to call as a witness.  The United States also requests that the court make such orders as it deems

7    necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which

8    it is entitled.

9         Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all

10   witnesses, except Defendant.  The time frame established by the rule requires the statement to be

11   provided after the witness has testified, as in the Jencks Act.  The United States hereby requests that

12   Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial

13   to be set by the court.  This order should include any form these statements are memorialized in,

14   including but not limited to, tape recordings, handwritten or typed notes and/or reports.

15                                            **IV**

16                 **MOTION TO COMPEL FINGERPRINT EXEMPLARS**

17        As part of its case, the United States must prove that Defendant was previously deported from

18   the United States.  To prove this element, the United States anticipates calling a certified fingerprint

19   examiner to testify that Defendant is the individual whose fingerprint appears on the warrants of

20   deportation and other deportation documents.  A number of chain of custody witnesses could be

21   eliminated, and judicial resources conserved, by permitting the Government's expert to take Defendant's

22   fingerprints himself.  The Defendant's fingerprints are not testimonial evidence.  See Schmerber v.

23   California, 384 U.S. 757 (1966).  Further, using identifying physical characteristics, such as fingerprints,

24   does not violate Defendant's Fifth Amendment rights against self-incrimination.  United States v.

25   DePalma, 414 F.2d 394, 397 (9th Cir. 1969); Woods v. United States, 397 F.2d 156 (9th Cir. 1968); see

26   also, United States v. St. Onge, 676 F. Supp. 1041, 1043 (D. Mont. 1987).  Accordingly, the Government

27   requests that the Court order that Defendant make himself available for fingerprinting by the

28   Government's fingerprint expert.

**LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request for leave to file further motions, so long as such motions are based on discovery not yet received by Defendant.

V

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's motions, except where not opposed, be denied and the United States' motion for reciprocal discovery be granted.

DATED:  November 17, 2007

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*/s/ Christina M. McCall*

CHRISTINA M. McCALL
Assistant U.S. Attorney

07CR2873-LAB

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,           )        Case No. 07CR2873-LAB
                  Plaintiff,        )
                                    )        **CERTIFICATE OF SERVICE**
           v.                       )
                                    )
JOSE MARIA PEREZ-NEGRETE,           )
                  Defendant.        )
_____)

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY, DISMISS INDICTMENT AND SUPPRESS STATEMENTS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Candis Mitchell, Esq.
Federal Defenders, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17, 2007.

/s/ Christina M. McCall

CHRISTINA M. McCALL

17                                                          07CR2873-LAB